**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-01260-RPM

MARY WILSON,

Plaintiff,

v.

BRADLEY PETROLEUM, INC., a Colorado Corporation

Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff, Mary Wilson, by and through her attorney Adam Balach of Taussig & Taussig, P.C., hereby sets forth her Response to Defendant's Motion for Summary Judgment and Supporting Brief pursuant to Fed. R. Civ. P. 56.

## INTRODUCTION

This case involves, Plaintiff, Mary Wilson's (hereinafter "Mary Wilson" and "Mary") contention that she is a victim of a hostile work environment, sexual harassment, and retaliation by the Defendant, Bradley Petroleum, Inc. (hereinafter "Bradley"). Bradley sent Rick Scholl to Grand Junction, CO in order to audit Mary Wilson's stores after a store manager is discovered to have been stealing merchandise and rolling money. Upon arrival, Rick Scholl finds Mary Wilson lying on the floor attempting to fix a safe, gets on top of her, and performs sexual movements with his crotch in her face and rubbing on her belly. Mary Wilson reports the incident to Bradley's HR department within two days of the incident. Bradley's HR Department has access to video feeds from every single store and quickly pulls up video surveillance of the incident. No

action is taken on Mary Wilson's behalf. The four weeks following the incident and Mary's report to HR results in constant scrutiny, demotion, sabotage of Mary's work, and ultimately Mary's resignation which is met with immediate termination.

The Defendant maintains that it's Vice President and President did not have knowledge of the Incident until 5 or 6 days after Mary Wilson's termination. Mary Wilson maintains that during the four weeks in question Vice President Anna Ciciora knows about the incident with Rick Scholl, knows that Mary reported it, and subsequently retaliates against Mary Wilson.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. Bradley Petroleum is a company of approximately 300 employees. **Exhibit 1**, (Ciciora Dep.) 6: 23-25. Bradley owns and operates gas stations throughout Colorado, New Mexico, Wyoming, and Nebraska and houses its only designated corporate office in Centennial, Colorado at 7268 South Tucson Way. **Ex. B** at 17-22. Some of the people working in the corporate office include Bradley "Buzz" Calkins, Jr., Anna Ciciora, and Mark Schlueter. Anna Ciciora is the Vice-President and General Manager. **Exhibit 1** (Ciciora Dep.) at 5: 4-5. Mark Schlueter is the Human Resources coordinator, and with Laurie in payroll makes up the human resources office for Bradley. *Id.* at 9: 4-13). Buzz Calkins is the President of Bradley. **Exhibit 2** (Calkins Dep.) 12: 2-3. Mary Wilson is a former district manager for the district which includes Grand Junction, Montrose, Delta, Glenwood Springs, and Silverthorne, Colorado. **Ex. B**, (Wilson Dep.) 8: 11-12.

2. During the morning of April 15, 2011, Mary Wilson is laying on her back behind the counter of Bradley Service station number 18 in Grand Junction, CO. Ex. G. Mary has to fix the new safe because an employee attempted to use old drop tubes in the new machine. **Ex. B**, at 39: 2-8.

3. As Mary continues to fix the safe, Rick Scholl arrives from Denver. **Ex.B** at 40: 6-8; Ex. G. Entering the store, Rick walks around the counter to Mary, straddles her, gets down on top of her, and simulates sexual movements by rubbing his crotch on her stomach. *Id.* Mary looks ahead and all she can see is Rick's crotch moving back and forth along her stomach area. *Id.* Mary can feel Rick's crotch and private parts on her body. *Id.* at 41: 14-16. In the moments of the incident, but what feels like minutes to Mary, she realizes what is happening and yells at Rick, hands him the screw driver, and tells him he can fix the safe. *Id.* at 40:12-15. Embarrassed, disgusted, and humiliated Mary leaves the store to gather her emotions and avoid breaking down in front of customers and employees. *Id.* at 42: 5-10, 20-22. It does not take long for word of the incident to spread through the company, as employees at other stores discuss the incident and laugh about it on the same day. *Id.* at 49: 11-22. Mary works through the day, arrives home that evening, and spends the entire night crying about the matter with her daughter and boyfriend until she falls asleep. *Id.* at 52: 2-10.

3. Bradley has produced an anti-sexual harassment policy, which alleges to be posted in all of its gas stations. **Ex. C** (Ciciora Dep.), 15: 21-25; **Exhibit 3** (Schlueter Dep.), 26: 24-27:7. This policy provides that an employee "In order to deal promptly and fairly with charges of sexual harassment, the person with the complaint must report the incident or incident to their immediate superior, or *any member of management*, in a timely fashion in order to bring a resolution. **Ex. H** (Policy). Mary Wilson is not aware of this policy and does not recall it being posted in any of the gas stations. **Ex. B** (Wilson Dep.) 53: 7-18. However, within two or three days Mary Wilson reports the incident to HR Coordinator Mark Schlueter who people know as the "HR Guy." **Ex. D** (Schlueter Dep.) 36: 6-37: 19; **Ex B.** (Wilson Dep.) 52: 24-25: 55. Within minutes of speaking with Mary, Mark Schlueter is able to watch the video on his computer at the corporate office in

Centennial, Colorado. *Id.*; **Exhibit 1** (Ciciora Dep.) 9: 6-8. Anna Ciciora agrees that it is reasonable for Mary to go to the HR department with her complaint. **Ex. C** (Ciciora Dep.) 17: 24-25 and 18: 1-5. Furthermore, Anna Ciciora agrees that the HR should take corrective action when there is a complaint of harassment. *Id.* at 18: 6-9. Additionally, Anna Ciciora agrees that upon a complaint of sexual harassment a company should take corrective action regardless of whether the person lodging the complaint is comfortable with the process. *Id.* at 15: 15-20. Bradley did none of these things.

4. Mark Schlueter spends 80% of his job recruiting new employees and making sure that managers are in the 48 stores, and puts them into their positions. **Exhibit 3** (Schlueter Dep.) 13: 1-8. Mark Schlueter hires employees for Bradley Petroleum. **Exhibit 3** (Schlueter Dep.) 31: 6-8. Mark Schlueter fields complaints from Bradley employees at least a few times every week. **Ex. D** (Schlueter Dep.) 17: 8-14. When circumstances arise such as legal issues or a company policy is broken, Mark Schlueter automatically reports the incident to Anna Ciciora. **Exhibit 3** (Schlueter Dep.) 23: 11-25: 24. At first, Anna Ciciora denies that Mark Schlueter fields employee complaints. **Exhibit 1** (Ciciora Dep.) 9: 18-21. However, Ms. Ciciora then goes on to say that Mark Schlueter does in fact report complaints to her. **Exhibit 1** (Ciciora Dep.) 11: 19-22.

5. As alleged by Ms. Ciciora in her deposition, she sends Rick Scholl to Grand Junction because she concluding that Mary needs help auditing her stores. **Ex. C** (Ciciora Dep.), 13: 7-13. Defendant's representatives allege that Mary's work performance starts declining on or about sometime in February 2011. **Ex. C** (Ciciora Dep.), 22: 8-24; **Ex. D** (Schlueter Dep.), 62: 14-63: 11; **Ex. E** (Ridley Dep.), 12: 4-13. However, after auditing Mary's store's Bradley finds that no problems exist. **Exhibit 3** (Schlueter Dep.) 65: 13-16. Bradley and witnesses also allege that

Mary's employees complain about her behavior and express dissatisfaction with her job. **Ex. C** (Ciciora Dep.), 24: 5-14; **Ex. E** (Ridley Dep.), 12: 25-13:9; 14:13-15:5. However, despite receiving complaints from employees every week, Mark Schlueter does not field complaints from Mary's employees regarding their dissatisfaction with her. **Ex. D** (Schlueter Dep.) 62: 16-22.

6. During her multiple conversations with Mark Schlueter, Mary Wilson explains that she is not comfortable reporting the incident to Anna Ciciora. **Exhibit 3** (Schlueter Dep.) 50: 4-6. Mary is uncomfortable telling Anna because she understands that Anna and Rick are good friends, are close, work together in Denver, and that Anna will likely get angry at the accusation. **Ex. B** (Wilson Dep.) 55: 14; 56: 8-18. Anna Ciciora has most of her personal contact with the District Managers in Denver which includes Rick Scholl. **Exhibit 1** (Ciciora Dep.) 7: 15-18. In fact, Anna Ciciora has a special trust in Rick Scholl. **Ex. C** (Ciciora Dep.) 14: 3-7. Mark Schlueter agrees with Mary that Anna will likely be angry with her about reporting the incident. **Ex. B** (Wilson Dep.) 56: 1-5. However, the discussions between Mark Schlueter and Mary do not include telling Buzz Calkins. **Exhibit 3** (Schlueter Dep.) 50: 14-16; Ex. B (Wilson Dep.) 58: 2-5.

7. As the multiple conversations between Mary and Mark progress, it becomes evident that Anna Ciciora is already aware of the incident. **Ex. B**( Wilson Dep.) 59: 16-23. It is shortly after the incident that Anna Ciciora really begins digging into Mary. **Ex. B** (Wilson Dep.) 58: 13-16. In the four weeks following the incident with Rick Scholl, rumors spread about Mary and she had family members dying. **Ex. C** (Ciciora Dep.), 23: 24-24:4; **Ex. B** (Wilson Dep.), 16: 10-25, 17:1-21, 61: 9-15. Anna promises Mary bereavement time for her family member's death, promises Mary that her stores will be taken care of, but does nothing for Mary making it look like Mary has neglected her district. **Ex. B** 17: 12-22.

8. Anna Ciciora even shows up to the funeral and begins interrogating Mary. *Id.* Within a couple of days after the funeral, Anna Ciciora makes the decision to demote Mary Wilson from her duties at the Silverthorne store. **Ex. C** (Ciciora Dep.) 20: 4-5. Defendant's representatives allege that Mary's demotion from the Silverthorne store is based purely on travel issues. **Exhibit 3** (Schlueter Dep.) 55: 1-5; **Ex. C** (Ciciora Dep.) 20: 7-8; **Ex. F** (Calkins Dep.) 34: 3-5, 35: 16-19. However, both the District Manager of Mary's district before and the current District Manager of Mary's district maintained responsibility of the Silverthorne store. **Exhibit 4** (Ridley Dep.) 21: 13-15, 26: 1-3. The current District Manager, who stepped into Mary's place, received a $20,000.00 raise. *Id.* at 25: 21-25. In addition to a loss of responsibility, a demotion means the loss of potential for bonuses. **Ex. B** (Wilson Dep.) 10: 1-9; **Exhibit 3**(Schlueter Dep.) 56: 9-14; **Exhibit 2** (Calkins Dep.) 31: 17-20.

9. The demotion from the Silverthorne store is the straw that breaks the camel's back and Mary decides she should resign. **Ex. B** (Wilson Dep.) 27: 12-17; **Ex. I**. Without any inquiry or investigation Anna Ciciora terminates Mary effective immediately. Mary is forced to move out of the house she is renting and take the first job she can find working part-time for $9.00 cleaning motel rooms. **Ex. B** (Wilson Dep.) 64: 10-16. Mary suddenly loses a $50,000.00 per year salary at Bradley. **Exhibit 4** (Ridley Dep.) 21: 13-15.

10. Bradley alleges that it promptly disciplines Rick Scholl shortly after learning about the incident five or six days after Mary's termination on May 18, 2011. **Ex. B** (Wilson Dep.), 13: 18-14:1; **Ex. F** (Calkins Dep.), 25: 12-20, 28:2-18; **Ex. A** (Ciciora Aff.), ¶ 7; **Ex. C** (Ciciora Dep.), 27: 13-17. Eventually, on July 31, 2011 Mary files her complaint with the Colorado Civil Rights Division which is accepted on August 8, 2011. **Exhibit 5** (Charge of Discrimination); **Exhibit 6** (Form II: Statement of Discrimination).

11. Even though Bradley argues that it promptly disciplines Rick Scholl, Rick's discipline does not take place until after Mary files her complaint with the Civil Rights Division. Bradley suspends Rick Scholl on August 30, 2011 with an effective date of September 15, 2011. **Exhibit 7** (Employee Warning). Rick Scholl is suspended for: violation of company policy, failure to follow instructions, horseplay, using abusive language, and ***another violation which appears to have been whited out***. *Id.*

STANDARD OF REVIEW FOR SUMMARY JUDGMENT

12. Summary Judgment is only warranted upon a showing that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1985). A motion for summary judgment must be reviewed in the light most favorable to the plaintiff as the non-moving party, and all reasonable inferences from the evidence in plaintiff's favor. *See Bell v. United States*, 127 F.3d 1226, 1228(10th Cir. 1997).

13. The initial burden is on the moving party to demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 447 U.S. 317, 325, (1986). Once the initial showing is made, the burden shifts to the non-moving party to designate specific facts showing there are genuine issues for trial. *Id.* at 324. In determining whether there is a material issue of fact, the nonmoving party's evidence is to be believed: all justifiable inferences are to be drawn in its favor; and its version of any disputed issue of fact is assumed to be correct. *Multistate Legal Studies, Inc., v. Harcourt Brace Jovanovich Publ., Inc.* 63 F.3d 1540, 1545 (10th Cir. 1996).

LEGAL ARGUMENT

I. *Mary Wilson Has Presented a Genuine Claim and Issue for Sexual Harassment*

14. Based on the incident with Rick Scholl and Bradley's subsequent acts, Mary Wilson has established a claim for sexual harassment. For an employer to be liable for its employee's act it must be shown to have allowed its employee to engage in sexual harassment. *Scarberry v. Exxonmobil Oil Corp.*, 328 F.3d 1255, 1257(10th Cir. 2003). A plaintiff "must establish that the employer had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998). Employers are not automatically liable for harassment perpetrated by their employees. *Meritor v. Sav. Bank v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 91 (1986). The plaintiff bears the burden of showing the employers conduct was unreasonable. *Wilson v. Tulsa Junior College*, 164 F.3d 534, 541 n.4 (10th Cir. 1998). The focus is on whether the employer is responsible for failing to intervene. *Hollins v. Delta Airlines*, 238 F.3d 1255, 1258 (10th Cir. 2001). The analysis can be conducted in two parts: 1) the employer's actual or constructive knowledge; and 2) adequacy of the employer's remedial and preventive responses. *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1244 (10th. Cir. 2001).

15. "Actual knowledge is usually demonstrable where the plaintiff has reported harassment to management-level employees." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1188 (10th Cir. 2007). This jurisdiction generally requires notice merely to management, but does not distinguish among the different levels of what constitutes management. *Hirschfeld v. New Mexico Corrections Department*, 916 F.2d 572, 577 (10th Cir. 1990). It has been held that reporting to a low-level management representative who had at least some authority over the Plaintiff among other employees is sufficient to constitute actual notice. *Adler* at 674.

16. In this case, Rick Scholl gets sent to Grand Junction in order audit Plaintiff's stores. However, according to Bradley, Rick Scholl is not in a position to discipline Plaintiff or fire her.

**Exhibit 2** (Calkins Dep.) 41: 3-5. Defendant's sexual harassment policy requires employees "to report the incident or incident to their immediate superior, or any member of management, in a timely fashion in order to bring a resolution." Here, Bradley's sexual harassment policy includes "any member of management" among the people authorized to receive reports of harassment. Once reported, such a complaint should put the company on notice of harassment. Mark Schlueter is known as the "HR Guy", recruits Bradley's new employees, hires employees, fields employee complaints, has access to security camera's to all 48 of Bradley's stores, and seemingly only reports the Bradley's VP Anna Ciciora or President Buzz Calkins. Defendant does not assert that it responded to Mary's complaints. Furthermore, Bradley asserts that it promptly disciplined Rick Scholl when it alleges to have found out about the incident. However, Rick Scholl's disciplinary action did not take place for nearly four months.

17. Bradley also contends that the incident alleged by Plaintiff is insufficiently severe and pervasive to constitute a hostile work environment. Sexual harassment occurs when physical conduct of a sexual nature has culminated in a tangible, adverse employment action such as hiring, firing, demotion, failure to promote, or assignment of significantly different responsibilities. *Faragher v. City of Boca Raton,* 524 U.S. 773, 790 (1998). Such factors as severity of conduct, serious isolated incident, or humiliation that interferes with an employees work performance are some of the things are court considers in a sexual harassment claim. *Id*. at 788. In many instances, a court must make a determination where the instance of conduct falls somewhere along the long sliding scale between forcible rape and the utterance of an epithet. *Ellison v.* Brady, 924 F.2d 872, 876 (9th Cir. 1991).

18. In order to establish that a hostile work environment exists a plaintiff must show:

> 1) she is member of a protected group; 2) she was subject to unwelcome harassment; 3) the harassment was based on sex; and 4) due to the harassments severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment.

*Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1262-63 (10th Cir. 2005). Actionable sexual harassment includes not only "economic or tangible discrimination" but also "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Harris v. Forklift Sys., Inc.* 510 U.S. 17, 21 (1993). To meet the severity standard a plaintiff needs to show that: 1) a reasonable person would find the work environment hostile or abusive; and 2) that she subjectively perceived the work environment to be hostile or abusive. *Smith v. N.W. Fin. Acceptance, Inc.,* 129 F.3d 1408, 1412 (10th Cir.).

19. Furthermore, the severity should be viewed from the perspective from the female plaintiff, or in other words that which a reasonable woman might find sufficiently severe or pervasive. *Ellison* at 879. In some cases, even a single incident of physically humiliating conduct can be sufficient to create a hostile work environment for a sexual harassment claim. *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072 (10th Cir.) Even a well-intentioned compliment can for the basis of a sexual harassment cause of action. *Ellison* at 879. Plaintiff's admissible evidence should be believed, and all justifiable inferences are to be drawn her favor. *Mackenzie v. City and County of Denver*, 414 F.3d 1266, 1273(10th Cir. 2005).

20. Here, as the Plaintiff tends to her work, Rick Scholl straddles her, squats down on top of her, and makes sexual movements. From Plaintiff's perspective, Scholl's crotch is in her face

and she can feel it rubbing on her belly. Rick Scholl also couples his movements with sexual references. In her position on the floor Plaintiff is very vulnerable. Half of Plaintiff's body is underneath a safe. Plaintiff cannot easily maneuver out of her position. Therefore, it is reasonable that a person in Plaintiff's position would feel physically assaulted, threatened, and humiliated.

***Plaintiff does not contest Defendant's motion as it pertains to her <u>Constructive Discharge claims</u>.***

II. *Wilson's Retaliation Claims*

21. Mary Wilson's demotion form the Silverthorne store and actions taken against her by Anna Ciciora are all facts which give rise to a claim for Retaliation. First, Whether or not the court determines that Wilson's claim of sexual harassment does not present an issue of material fact to defeat summary judgment does not dispose of Mary Wilson's claim for retaliatory discharge. *See Nelson v. Pima Community College*, 83 F.3d 1075 (9th Cir. 1996)(finding that an employee need only show a "reasonable belief" that the practice constituted discrimination). It has been determined that where a plaintiff reasonably believes that it is unlawful to be subjected to sexually offensive remarks she should be protected from retaliation. *Trent v. Valley Electric Ass'n*, 41 F.3d 524 (9th Cir. 1996).

22. In order to prove retaliation a plaintiff must show that: 1) she engaged in a protected opposition to discrimination; 2) that a reasonable employee would have found the challenged action materially adverse, and 3) that a causal connection existed between the protected activity and the materially adverse action. *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir.

2008). If the plaintiff establishes a prima facie case, the employer must then offer a legitimate, non-retaliatory reason for its decision. *Id.* at 1211. Finally, once the employer has satisfied this burden of production, the plaintiff must show that the employer's reason is merely pretext for retaliation. *Id.*

23. First, even informal complaints to superiors constitutes protected activity. *Somoza* at 1213.

24. Secondly, such things as being laughed at, snickered at, and treated with continued hostility by other individuals may give rise to adverse actions. *Somoza,* at 1215. "[A]dverse job action is not limited solely to loss or reduction of pay or monetary benefits, but can encompass other forms of adversity as well." *Collins v. State of Illinois*, 830 F.2d 692, 703 (7th Cir.1987). However, an adverse action most typically is associated with an ultimate employment decision such as hiring, compensating, promoting, granting leave, or firing. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.) Adverse employment action can also be shown by acts such as a demotion, reprimands, or sabotage. *Mattern v. Eastman Kodak Co.*, 104 F. 3d 702, 707 (5th Cir. 1997).

25. Here, within four weeks of reporting the incident, Mary Wilson is informed that she no longer is in charge of the store in Silverthorne, Colorado. Mary is not even forewarned of her demotion. Instead, Mary Wilson is first informed by her store manager that Rick Scholl is taking her place. Rick Scholl then telephones the Mary and informs her of the same. This demotion not only results in the loss of responsibility and embarrassment, but also in the loss of the potential for a $100.00 bonus each time it could be earned. The demotion from the Silverthorne store is the ultimate decision of Anna Ciciora.

26. Furthermore, in the four weeks between the incident with Rick Scholl and Mary's last day, Mary's mother passes away. When Mary asks for bereavement time, Anna Ciciora tells her that it is fine and that things will be taken care of at work. However, Anna Ciciora does not make sure that the stores are taken care of, and then blames Mary for the neglect. **Ex. C** (Ciciora Dep.) 20: 21-25:21. Instead of helping, Anna Ciciora shows up at Mary's mother's funeral and interrogates her. It is only a few days after the funeral incident that Mary is demoted from her responsibility to the Silverthorne store. In this case, the adverse actions are clear.

27. Under the third prong, Plaintiff must show that a causal connection exists between the adverse actions and her protected activity. *Somoza* at 1212. Where the adverse action is closely connected in time with the protected activity Plaintiff establishes causation. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F. 3d 1164, 1171-1172 (10th Cir. 2006). The Tenth Circuit similarly held, that a one and one-half month period between the protected activity and the adverse action may, by itself, establish causation. *Ramirez v. Okla. Dept. of Mental Health,* 41 F.3d 584, 596 (10th Cir. 1994). However, a three month gap was found not to be sufficient to establish causation. *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997).

28. Here, the incident with Rick Scholl takes place on April 15, 2011. Mary reports the incident to Human Resources on approximately April 17th or 18th of 2011. Mary's last day with Bradley is on May 18, 2011. The demotion, scrutiny, and sabotage by Anna Ciciora all take place within the four weeks between the incident and Mary's last day. These facts alone are enough to establish a causal connection between Mary's protected activity and the adverse actions she endured.

29. Finally, Mary Wilson can show that her employer's reasons for her treatment are merely pretext for retaliation. Witnesses Buzz Calkins and Mark Schlueter allege that Mary's demotion

form Silverthorne is purely a travel issue. Anna Ciciora alleges that the demotion is because she found the Silverthorne store to be neglected. However, Silverthorne was a part of Mary's district before her arrival and remains a part of her district after her departure. Additionally, the Silverthorne store's neglect is the result of Anna Ciciora telling Mary that she can have bereavement, and then does nothing to make sure that Mary's stores are watched over for her. Defendant alleges that Mary's work fell off, but audits reveal that her work is fine. Furthermore, other than testimony, Defendant has not provided any documentation that Mary did not perform properly.

30. Finally, Defendant alleges it does not find out about the incident with Scholl until about five or six days after the incident, it takes harassment very seriously, and that it promptly disciplined Scholl. However, there are facts to show that Anna Ciciora knew about the incident with Scholl based on her treatment of Mary. Facts show that Anna is close friends with Rick Scholl, trusts him, and worked close with him in Denver. Lastly, Anna Ciciora alleges to have promptly disciplined Rick Scholl. However, based on her actions it appears that Anna Ciciora actually did not intend to discipline Scholl because it was not until after Mary filed her complaint with the Civil Rights Division that Anna realized that she probably needed to cover for Defendant by suspending Rick Scholl in September of 2011.

31. WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant Bradley Petroleum, Inc. Motion for Summary Judgment.

**DATED** this 27th day of June, 2013.

Respectfully Submitted,

[*]s/ Adam N. Balach

Adam N. Balach, Atty. No. 41992
Taussig & Taussig, LLC
5377 Manhattan Circle, Suite 203
Boulder, Colorado 80303
Tel: 303-443-2700
Fax: 303-448-9600
adam@taussiglaw.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2013, I electronically filed the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

William Rapson
Welborn, Sullivan, Meck & Tooley
1125 17th Street, Suite 2350
Denver, CO 80202
Telephone: 303.376.4466
Attorney for Defendant
brapson@wsmtlaw.com
dwiletsky@wsmtlaw.com

**s/Shawn Smith*
Shawn Smith

4822-2856-3472, v. 1

[*] *Pursuant to Electronic Case Filing Procedure for the District of Colorado (Civil Cases) § 5(C)(1-3), the "s/ signature" serves as the filer's signature on all such documents filed with the court. It also serves as the filer's signature for purposes of the Federal Rules of Civil Procedure, the local rules of this court, and any other purpose for which a signature is required in connection with proceedings before the court.*