IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch

Civil Action No. 12-cv-01260-RPM

MARY WILSON,

    Plaintiff,

v.

BRADLEY PETROLEUM, INC., a Colorado Corporation,

    Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

    Plaintiff Mary Wilson brought this action against her former employer, Bradley Petroleum ("Bradley"), claiming that she was subjected to a hostile work environment, sexual harassment, and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-402. Defendant has moved for summary judgment on all claims.

    There is no genuine dispute as to the following facts. Bradley Petroleum owns gas service and convenience stores throughout Colorado. It employs six District Managers, who manage six to eight Bradley stores within assigned geographical districts. Wilson was a District Manager for Bradley's Grand Junction District, which includes four stores in Grand Junction, and stores in Delta, Montrose, Glenwood Springs, and Silverthorne.

    The District Managers report to Anna Ciciora, Bradley's Vice President and General Manager. In March 2011, Wilson informed Anna Ciciora of a cash and merchandise

shortage in one of her Grand Junction stores. Ciciora asked Mark Schlueter, Bradley's Human Resources Coordinator, and Rick Scholl, another District Manager, to help Wilson audit her stores.

Scholl traveled to one of Wilson's Grand Junction stores on April 15, 2011 to assist with an audit. When he arrived, Wilson was fixing a broken safe behind the cash register counter. While Wilson was lying on the floor on her back, with her upper body under the counter, Scholl walked over to her, squatted down, straddling her midsection, and made a sexually-suggestive comment while moving against her body. Wilson protested, Scholl jumped up, and the Plaintiff left the store, emotionally upset. The incident was in full view of store employees and customers. The store's security camera recorded this event on video, showing a time lapse of no more than five seconds. Two days later, Wilson showed the video to Mark Schlueter and told him what happened.

May 2011 was a very difficult time in Wilson's private life. Her mother and her boyfriend's mother did in almost immediate succession. When Wilson returned to work on May 16 after taking bereavement leave, she was ill but was told that she was required to attend a mandatory company meeting in Denver on May 18. Wilson worked again on May 17, despite her illness, causing her to miss the funeral of her boyfriend's mother. She also heard that she was no longer going to manage the Silverthorne store.

At the end of the day, Wilson drafted a letter, headed "Notice of Intent." Wilson stated in the letter that she would not attend the meeting on May 18 because of her health and that she was "voluntarily terminating [her] employment" because: (1) she worked so much for Bradley that she was unable to tend to her mother before she died; (2) Scholl "displayed some very inappropriate behavior in front of [her] staff and customers"; (3) she was being

2

forced to attend the May 18 meeting in Denver despite being sick; (4) rumors about her personal life were being spread throughout the company; (5) she felt "a bit ignored and disconnected" from company headquarters; (6) Scholl was going to take over managing the Silverthorne store; and (7) she was generally "just very overwhelmed. . . . too tired, too sick, and too grief stricken to continue dealing with all the pressures, rumors, and bad behavior." [*See* Doc. 19, Ex. I.] Wilson sent the letter to Anna Ciciora the next day.

In her letter, Wilson said that June 4, 2011 would be her last day at Bradley. Ciciora informed Wilson that Bradley was accepting her resignation effective immediately.

Wilson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Division on July 31, 2011. The EEOC issued Wilson a "Right to Sue" letter on March 8, 2012.

To sustain a viable Title VII and CADA claim, Plaintiff must show that there is sufficient evidence for a jury to find that her work environment was abusive to her as a woman because of intimidation, insult, and ridicule sufficiently severe as to alter the conditions of her employment. *See Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998).[1] The evidence Wilson offers is Scholl's abusive conduct at the Grand Junction store on April 15, 2011. An isolated incident of sexual misconduct is insufficient to support a hostile work environment claim unless it is "extremely serious." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The applicable standard is that of a reasonable woman in Wilson's situation. Scholl's intent is irrelevant. There is no disagreement that

---

[1] Colorado courts look to Title VII for guidance in applying the CADA in state employment discrimination cases. *See Colo. Civil Rights Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 399 (Colo. 1997); *see also Adkins v. United Food & Comm'l Workers Intern. Union, Local 7*, 16 Fed. Appx. 855, 859 n.3 (10th Cir. 2001). Here, Plaintiff asserts claims of sexual harassment, constructive discharge, and retaliatory discharge under both Title VII and the CADA. Thus, the Court will rely on Title VII case law to analyze all claims.

Wilson was angry, humiliated and disgusted in response to Scholl's violation of her dignity and that the effects lasted much longer than the few seconds of physical contact. However, this incident was not so serious as to warrant a finding that it altered the conditions of Wilson's employment. Accordingly, she has failed to sustain her hostile work environment claim.

Wilson has been ambivalent about her constructive discharge claim. She did not assert it in response to Defendant's Motion for Summary Judgment but attempted to do so at oral argument. In any event, the evidence does not contradict Wilson's own words in her letter that she was resigning voluntarily, which defeats her position that the conditions of her employment somehow compelled her to resign.

Wilson advances two theories in support of her retaliation claim. First, Wilson maintains that after she complained to Schlueter, Ciciora unfairly criticized and scrutinized her performance, including demoting her by removing the Silverthorne store from her district. There were no salary or benefits changes because of the Silverthorne reassignment. Therefore, Plaintiff cannot establish that she suffered an adverse action. Even if she could, Plaintiff admits that she did not report Scholl's conduct to Ciciora and has no evidence to contradict Ciciora's testimony that she was not aware of it during the relevant period of time. Therefore, a causal connection between Plaintiff's protected activity and Ciciora's actions is also lacking.

Second, Wilson argues that Bradley retaliated against her because Ciciora accepted her resignation immediately, even though Wilson said her resignation would not take effect until two weeks later. An employer's early acceptance of an employee's resignation does not constitute an "adverse employment action" under Title VII. *See, e.g.*, *Vasquez v. Potomac*

5

*Hosp., Inc.*, No. 10-cv-216, 2010 WL 3984685, at \*6 (E.D. Va. Oct. 8, 2010) ("Plaintiff resigned of his own accord, and his argument that Potomac's early acceptance of the resignation was retaliatory termination is without merit."). Wilson's retaliation claim must be dismissed.

Upon the foregoing, it is

ORDERED that Defendant's Motion for Summary Judgment is granted. The Clerk shall enter judgment for Defendant, dismissing all of Plaintiff's claims and awarding costs.

Dated:  August 23, 2013

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch
Senior District Judge